AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| United States of America | ) |
|---|---|
| v. | ) |
|  | ) Case No. 2:22-mj-447 |
|  | ) |
|  | ) |
|  | ) |
| Kelvin BATTLE | ) |
| *Defendant(s)* |  |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  May 2021 - June 2022  in the county of  Franklin  in the Southern District of Ohio, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) | Conspiracy to distribute and possess with intent to distribute 400 grams or more of Fentanyl. |
| 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) | Conspiracy to distribute and possess with intent to distribute 500 grams or more of Methamphetamine. |

This criminal complaint is based on these facts:
See attached affidavit, which is incorporated by reference.

☒ Continued on the attached sheet.

*Special Agent Noah Bookman*
Complainant's signature

DEA Special Agent Noah Bookman
Printed name and title

Sworn to before me and signed in my presence.

Date: 6/27/2022

*Chelsey M. Vascura*
Chelsey M. Vascura
United States Magistrate Judge
Judge's signature

City and state: Columbus, Ohio

Chelsey M. Vascura, U.S. Magistrate Judge
Printed name and title

Case No. 2:22-mj-447

## AFFIDAVIT

I, Noah Bookman, being duly sworn, depose and state the following:

### INTRODUCTION

1. I am a Special Agent of the Drug Enforcement Administration (DEA), assigned to the Detroit Field Division, Columbus District Office (CDO). As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1).

2. Prior to being employed by the DEA, I graduated from the Hocking College Ohio Peace Officer Training Academy located in Nelsonville, Ohio, in June 2005. I received approximately 16 weeks of specialized police training including but not limited to search and seizure, investigative techniques, testifying in court, evidence collection, interview and interrogation, and controlled substance identification. I also received an Associate's Degree from Hocking College in Police Science. From April 2005 to January 2007, I was employed by the Hocking County Sheriff's Office, Patrol Bureau. From January 2007 to June 2014, I was employed by the City of Lancaster Police Division, assigned to the Patrol Bureau. From June 2012 to September 2014, I was assigned to the Major Crimes Unit. In September 2014, I was hired by the DEA. In February 2015, I graduated from the DEA Academy and reported directly to the CDO.

3. During the course of my law enforcement career, I participated in numerous investigations involving narcotics trafficking. I received specialized training in narcotics trafficking and money laundering from the DEA and I have been personally involved in investigations concerning the possession, manufacture, transportation, distribution, and importation of controlled substances, as well as methods used to finance drug transactions. I have experience in debriefing defendants and interviewing participating witnesses, cooperating individuals, and other persons who have personal

knowledge and experience regarding the amassing, conversion, transportation, distribution, and concealment of records and proceeds of trafficking in controlled substances. As a special agent and a police officer, I participated in the execution of numerous search warrants at the residences and businesses of narcotics traffickers, safe houses, crack houses, and I participated in numerous arrests for drug-related offenses. I have drafted numerous search warrants. As a special agent, I participated in investigations targeting individuals and organizations trafficking heroin, fentanyl, cocaine, cocaine base ("crack"), marijuana, methamphetamine, and other controlled substances, as defined in Title 21, United States Code, Section 801.

## PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of an application for federal arrest warrants and complaints against Susana **ORELLANA**, Martel **OWENS**, Darrell **PETERMAN** SR, Dwayne **CHILDS**, Justin **BERRIEN**, Lina **HOULE**, Kelvin **BATTLE**, Jermaine **PETERSON**, Carl **JENKINS**, and James **SHEETS**. My knowledge of this investigation is based upon my own personal observations, as well as the observations and investigations conducted by other law enforcement officers and investigators concerning the facts and circumstances involved in the subject investigation. I have not included in this affidavit all the facts known to me, but only that information sufficient to establish probable cause to believe all of the above-listed individuals committed violations of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A), conspiracy to distribute and possess with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

## SUMMARY OF PROBABLE CAUSE

1. Since May of 2021, the Drug Enforcement Administration (hereinafter, "DEA") Columbus District Office, and other law enforcement agencies, have been investigating a Polydrug Trafficking Organization (PTO) cell operated by Isabel CASTELLANOS (hereinafter, "CASTELLANOS") in Columbus, Ohio.

2

2. Through the investigation, investigators determined the following information. Investigators identified CASTELLANOS' role as a regional cell leader, which is a source of supply and facilitator for cocaine, methamphetamine (hereinafter "meth"), heroin, marijuana, and fentanyl. CASTELLANOS transports the narcotics from Los Angles, California to Columbus, Ohio, via semi-truck. CASTELLANOS is a business owner of a transportation company and a semi-truck driver, who frequently travels across the United States. Investigators identified Susana **ORELLANA** (hereinafter, "**ORELLANA**") as a courier for the cocaine, meth, marijuana, heroin, and fentanyl for the CASTELLANOS PTO. **ORELLANA** transports the narcotics from the stash house to the mid-level retail distributors. **ORELLANA** controls the narcotics at her residence, located in Columbus, Ohio for the CASTELLANOS PTO. Investigators identified Darrell **PETERMAN** SR (hereinafter, "**PETERMAN**") as a mid-level retail distributor in cocaine and fentanyl for the CASTELLANOS PTO in the Youngstown, Ohio area. Investigators identified Martel **OWENS** (hereinafter, "**OWENS**") as a mid-level retail distributor in cocaine, fentanyl, and methamphetamine for the CASTELLANOS PTO in the Springfield, Ohio area. Investigators identified Dwayne **CHILDS** JR (hereinafter, "**CHILDS**") as a mid-level retail distributor in cocaine, fentanyl, and marijuana for the CASTELLANOS PTO in the Columbus, Ohio area. These mid-level retail distributors would contact CASTELLANOS when their supply of narcotics was low. When CASTELLANOS was unavailable to deliver the narcotics to the mid-level retail distributor(s), CASTELLANOS would contact **ORELLANA** to deliver and complete the narcotic transaction(s). Subsequently, **ORELLANA** would collect the drug proceeds after the transaction(s) and return to her residence, in Columbus, Ohio. Later, CASTELLANOS would collect the drug proceeds from **ORELLANA** and return to California.

3. Investigators identified Justin **BERRIEN** (hereinafter, "**BERRIEN**"), Linda **HOULE** (hereinafter "**HOULE**"), Kelvin **BATTLE** (hereinafter "**BATTLE**"), and Jermaine **PETERSON** (hereinafter, "**PETERSON**") as local distributors of methamphetamine and/or fentanyl for **OWENS'** PTO in the Springfield, Ohio area and beyond. Investigators identified Carl **JENKINS** (hereinafter, "**JENKINS**") and James

**SHEETS** (hereinafter, "**SHEETS**") as distributors of methamphetamine for **PETERSON**'S DTO.  **JENKINS** and **SHEETS** are based out of West Virginia.

4. On or about July 15, 2021, while conducting surveillance, investigators observed a white BMW, registered to **ORELLANA**, parked next to a Kenworth semi-truck. The Kenworth semi-truck is owned by Golden Eagle Transportation Inc. The owner of Golden Eagle Transportation is CASTELLANOS. While parked next to the semi-truck, investigators noticed CASTELLANOS and **ORELLANA** placing items into the cab of the Kenworth semi-truck.  After the items were placed into the Kenworth semi-truck, CASTELLANOS and **ORELLANA** departed the area in the BMW, with CASTELLANOS as the driver. Through a court order, investigators placed an electronic monitoring device onto the Kenworth semi-truck.  Later the same day, investigators noticed the Kenworth semi-truck depart from the Hollywood Casino. The Ohio State Highway Patrol conducted a traffic stop on the Kenworth semi-truck in the Southern District of Ohio.  The driver and the sole occupant of the Kenworth semi-truck was identified as CASTELLANOS. During the traffic stop, a drug detection K-9 gave a positive alert on the Kenworth semi-truck.  During a probable cause search of the Kenworth semi-truck, Troopers located $316,210 of United State currency (USC) in a box within the cab. During an interview with Troopers, CASTELLANOS denied knowledge of the USC in the Kenworth semi-truck.  Troopers seized the USC and released CASTELLANOS.

5. On or about November 7, 2021, through a credible source of information, investigators learned **PETERSON** requested to purchase 1.5 pounds or 680.38 grams of meth from **OWENS**. **PETERSON** indicated the customer was from West Virginia, (later identified as **JENKINS** and **SHEETS**). **OWENS** agreed to travel with **PETERSON** to distribute the 680.38 grams of meth to **JENKINS** and **SHEETS**. **OWENS** proceeded to travel with **PETERSON** to the agreed meet location, in Columbus, Ohio.  Once at the agreed meet location, **PETERSON** met with **JENKINS** and **SHEETS**.  **PETERSON** entered **SHEETS** and **JENKINS**'s vehicle, a Chevy, for a short period of time, and then returned to his vehicle as both parties departed the area.  Later, the Ohio State Highway Patrol conducted a traffic stop on the Chevy occupied by **SHEETS** and **JENKINS** for a traffic infraction. During the traffic stop, a drug detection K-9 gave a positive alert on the

4

Chevy. During a probable cause search of the Chevy, Troopers located and seized the following items: Springfield XD-9 handgun, thirteen rounds of ammunition, Ruger Mark IV handgun, ten rounds of ammunition, one magazine containing nine rounds of ammunition, approximately 720.1 gross grams of a substance that field tested positive for methamphetamine, and approximately 89.1 gross grams of suspected marijuana. **SHEETS** and **JENKINS** both acknowledge the seized items were in the vehicle.

6. On or about November 13, 2021, through a credible source of information, investigators learned **OWENS** requested **BATTLE** to "cut" (a cutting agent is a chemical used to "cut" (i.e. dilute or adulterate) recreational drugs with something less expensive than the drug itself to produce more of that narcotic) one ounce of fentanyl into two ounces of fentanyl. **BATTLE** agreed to "cut" the fentanyl for **OWENS**. Next, **OWENS** left a residence in Springfield, Ohio and travelled in a Ford truck to **BATTLE**'s residence, which is also located in Springfield, Ohio. When **OWENS** arrived at **BATTLE**'s residence, **BATTLE** exited the residence and met with **OWENS**. After a brief conversation, **BATTLE** returned to his residence and **OWENS** departed the area. Later in the evening, **BATTLE** indicated to **OWENS** he was done cutting the fentanyl. **OWENS** returned to **BATTLE**'s residence. **OWENS** entered **BATTLE**'s residence. A short time later, **OWENS** exited the residence and departed the area in the Ford. Later, the Ohio State Highway Patrol conducted a traffic stop on **OWENS** for a traffic infraction. During the traffic stop, a drug detection K-9 gave a positive alert on the Ford. During a probable cause search of the vehicle, Troopers located and seized the following items: a 9mm handgun with 6 rounds of ammunition, approximately 120.4 gross grams of suspected fentanyl, approximately 58.8 gross grams of suspected marijuana, and approximately 38.4 gross grams of suspected crack cocaine. After the Troopers seized the items, **OWENS** admitted the items located were his.

7. On or about November 18, 2021, through a credible source, investigators learned **OWENS** requested five pounds, or 2,267.96 grams, of meth from CASTELLANOS. **OWENS** agreed to pay $2,400 per pound of meth from CASTELLANOS. **OWENS** also indicated he had $2,000 from a previous fentanyl debt for CASTELLANOS. The total price for the requested five pounds of meth was $12,000 USC. Through a credible source, **OWENS** contacted **BERRIEN** and requested

5

**BERRIEN** to collect the USC from an individual, who resides in Springfield, Ohio, and transport the USC to his residence in London, Ohio. Later that evening, investigators observed **BERRIEN** and **HOULE** arrive at **OWENS**' residence. Subsequently, investigators observed **BERRIEN**, **HOULE**, and **OWENS** exit the residence and enter **BERRIEN**'s vehicle, a Chevy Trailblazer. All three individuals departed the area in **BERRIEN**'s vehicle. **BERRIEN** drove directly to the agreed meet location, a Walmart in London, Ohio. Investigators observed **ORELLANA** park her black GMC Terrain near **BERRIEN**'s vehicle. **ORELLANA** exited the GMC with a bag. **ORELLANA** carried the bag to the rear passenger side of **BERRIEN**'s vehicle, where **OWENS** was positioned in the vehicle. **ORELLANA** returned to the GMC without the bag. All parties departed the area. **ORELLANA** returned to her residence, in Columbus, Ohio. After meeting with a known trafficker in London, Ohio, all three individuals returned to **OWENS**' residence, only to drop off **OWENS**. Investigators continued surveillance on **BERRIEN** and **HOULE**. A short time later, an Ohio State Highway Patrol Trooper conducted a traffic stop on the GMC for a traffic infraction. During the traffic stop, a drug detection K-9 gave a positive alert on **BERRIEN**'s vehicle. During a probable cause search of **BERRIEN**'s vehicle, Troopers located and seized the following items: a Taurus Spectrum .30 handgun containing 4 rounds of ammunition, approximately 74.6 gross grams of suspected marijuana, approximately 36.9 gross grams of suspected fentanyl, approximately 39.6 gross grams of suspected Xanax, approximately 34.1 gross grams of suspected crack cocaine, and approximately 35.7 gross grams of suspected methamphetamine. After the Troopers seized the items from the vehicle, **HOULE** admitted that the handgun and the narcotics were hers. **BERRIEN** and **HOULE** were released from the traffic stop.

8.  Throughout the investigation, investigators noticed, by physical and/or electronic surveillance, CASTELLANOS and/or **ORELLANA** would travel to meet **OWENS** in Springfield, Ohio. Investigators recognize it is approximately 44 miles from Columbus, Ohio to Springfield, Ohio. A round trip from Columbus, Ohio to Springfield, Ohio is approximately 88 miles or 1 hour and 35 minutes. After this travel, CASTELLANOS and/or **ORELLANA** would only meet with OWENS for a short

duration and then return to Columbus, activity that investigators recognized as consistent with narcotics trafficking.

9. On or about February 11, 2022, through a credible source of information, investigators learned **PETERMAN** requested to purchase one kilogram of cocaine and one kilogram of fentanyl from CASTELLANOS. On the same day, CASTELLANOS and **ORELLANA** travelled to the agreed meet location in Youngstown, Ohio, where **PETERMAN** entered **ORELLANA's** BMW for a short period of time. CASTELLANOS and **PETERMAN** exited the BMW and **ORELLANA** stayed in and appeared to be counting drug proceeds that was obtained from **PETERMAN**. While **ORELLANA** was in the BMW, CASTELLANOS and **PETERMAN** communicated outside and inside of the residence. After approximately twenty minutes elapsed, CASTELLANOS and **ORELLANA** departed the area in the BMW. A short time later, **PETERMAN** exited the residence and departed the area in a Nissan Maxima that was parked in the driveway. Subsequently, the Ohio State Highway Patrol conducted a traffic stop on **PETERMAN** in the Nissan for a traffic infraction. During the traffic stop, a drug detection K-9 gave a positive alert on the Nissan. During a probable cause search of the Nissan, Troopers located and seized the following items: approximately 1,146.4 gross grams of a substance that field tested positive for fentanyl and approximately 1,175.9 gross grams of a substance that field tested positive cocaine. **PETERMAN** was released from the traffic stop.

10. Using physical and/or electronic surveillance, investigators noticed that CASTELLANOS and/or **ORELLANA** would travel to **PETERMAN**'s residence in Youngstown, Ohio. Investigators recognize it is approximately 182 miles from Columbus, Ohio to Youngstown, Ohio. A round trip from Columbus, Ohio to Youngstown, Ohio is approximately 364 miles or 5 hours and 41 minutes. At these meetings at a PETERMAN's residence, CASTELLANOS and/or **ORELLANA** would only stay for a short duration, before returning back to Columbus, activity that investigators recognize as consistent with narcotics trafficking.

11. On or about June 4, 2022, through a credible source of information, investigators learned that CASTELLANOS directed **ORELLANA** to **CHILDS** residence located in Columbus, Ohio. CASTELLANOS indicated for **ORELLANA** to transport

7

5,000 pills (later identified as fentanyl pills), marijuana, and one kilogram of cocaine to **CHILDS**. CASTELLANOS indicated that **CHILDS** would have approximately $36,000 in USC for her. On the same day, **ORELLANA** and a male juvenile (MJ) arrived at the agreed meet location in her black GMC Terrain. **ORELLANA** and MJ entered the residence, with MJ carrying a book bag. After approximately half an hour, **ORELLANA** and MJ exited the residence (with the MJ carrying the same book bag), entered the GMC, and departed the area. Based upon investigators training and experience, conversational context, and knowledge of the investigation, investigators believe **ORELLANA** completed this drug transaction and collected the drug proceeds with **CHILDS** as directed by CASTELLANOS.

      12.    Throughout the investigation, investigators noticed, by physical and/or electronic surveillance, CASTELLANOS and/or **ORELLANA** would travel to **CHILDS**' residence, located in Columbus, Ohio. Investigators recognize it is approximately 9 miles from **ORELLANA**'s residence to **CHILDS**' residence. A round trip from **ORELLANA**'s residence to **CHILDS**' residence is approximately 18 miles or 48 minutes. CASTELLANOS and/or **ORELLANA** would only stay for a short duration.

      13.    On June 4, 2022, through a credible source of information, investigators learned CASTELLANOS planned to travel into Columbus, Ohio from Los Angeles, California with a large amount of narcotics. CASTELLANOS would be transporting the narcotics in a semi-truck.

      14.    On or about June 6, 2022, an Ohio State Highway Patrol marked unit conducted a traffic stop on a semi-truck, bearing Arizona registration of AL14077, and the trailer, bearing California registration of 4SD3831, for a traffic infraction. The traffic stop occurred on I-70 traveling eastbound near State Route 56. The driver of the vehicle was identified as CASTELLANOS.

      15.    During the traffic stop, a drug detection K-9 gave a positive alert on the semi-truck. During a probable cause search of the semi-truck, Troopers located and seized the following items: approximately 54,340 gross grams (54.34 kilograms) of a substance that field tested positive for fentanyl and 4,620 gross grams (4.62 kilograms) of a substance that field tested positive for cocaine from the sleeper area of the semi-truck. CASTELLANOS admitted to transporting the narcotics to pay off a previous debt, where

law enforcement seized a large sum of USC from him.  CASTELLANOS also admitted that he was responsible for all of the narcotics and cash that were contained in the stash house under the control of **ORELLANA.**

16. Subsequently, investigators conducted a consent search of a stash house belonging to **ORELLANA** in Columbus, Ohio.  During the search of the residence, investigators seized the following items: approximately 290 gross grams of a substance that field tested positive for heroin, 3,410 gross grams (3.41 kilograms) of a substance that field tested positive for cocaine, 3,600 gross grams (3.6 kilograms) of suspected marijuana, 8,950 gross grams (8.95 kilograms) of a substance that field tested positive for meth, 19,550 gross grams (19.55 kilograms) of a substance that field tested positive for fentanyl, approximately $162,000 in cash, and three firearms.

## CONCLUSION

17. Based upon this information, the large amounts of cash recovered, the size of the shipments of narcotics, and admissions made by members of the PTO, investigators believe in the last year this PTO has distributed and possessed with the intent to distribute in excess of 600 kilograms of fentanyl worth approximately $20 million, more than 45 kilograms of cocaine worth more than $1 million, more than 400 pounds of methamphetamine worth approximately $1 million, and approximately 12 kilograms of heroin worth approximately $400,000.  Investigators have also seized approximately a half of million dollars in USC, and seven firearms from various members of the CASTELLANOS PTO.

9

18. Based upon this information, your affiant believes probable cause exists that James **SHEETS**, Carl **JENKINS**, Jermaine **PETERSON**, Kelvin **BATTLE**, Linda **HOULE**, Justin **BERRIEN**, Dwayne **CHILDS** Jr., Darrell **PETERMAN** Sr., MARTEL **OWENS**, and SUSANA **ORELLANA** have violated Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A), conspiracy to distribute and possess with the intent to distribute 400 grams or more of fentanyl and conspiracy to distribute and possess with the intent to distribute 500 grams or more of methamphetamine.

*Special Agent Noah Bookman*
Noah Bookman
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
this __27th__ day of June 2022.

_Chelsey M. Vascura_
Honorable Chelsey M. Vascura
United States Magistrate Judge

10